**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION**

STEPHEN WOODARD,                                           Case No.
    Plaintiff,

v.

ALLIED INTERSTATE, INC.,                          **JURY TRIAL DEMANDED**
    Defendant.
_____/

**COMPLAINT FOR UNLAWFUL DEBT COLLECTION PRACTICES
AND DEMAND FOR JURY TRIAL**

**I.  Introduction**

1. This is an action for damages brought by an individual consumer for Defendant's violations of the Fair Debt Collection Practices Act, 15 U.S.C. §1692, et. seq. (hereafter "FDCPA") and the Florida Consumer Collection Practices Act, F.S.A. §559.72 (hereafter "FCCPA").  These laws prevent debt collectors from *inter alia*, engaging in abusive, deceptive, and unfair collection practices.

**II.  Jurisdiction and Venue**

2. Jurisdiction of this Court arises under 15 U.S.C. §1692k(d), 28 U.S.C. §1331, 1337.

3. Venue lies in this District pursuant to 28 U.S.C. §1391(d).

**III. Parties**

4. Plaintiff, Stephen Woodard, (hereafter "Plaintiff) is an individual residing at 11901 4th Street North, St. Petersburg, FL 33716.

5. Defendant Allied Interstate, Inc. (hereafter "Allied" or "Defendant") is a for-profit foreign corporation, with its principal place of business located at 12755 State Highway 55, Ste 300, Plymouth MN 55441.  The principle purpose of Defendant is the collection

of debt, using the mail and telephone, and Defendant regularly attempts to collect debts alleged to be due to another.

**Factual Allegations**

1. On or about September 9, 2010, Plaintiff received a call from a representative of Allied who identified herself as Linda.

2. Linda on behalf of defendant Allied, was attempting to collect a debt that was used primarily for personal family or household purposes.

3. During the initial communication Plaintiff told Linda that he had hired an attorney to represent him regarding the debt and that he intended to file bankruptcy.

4. Plaintiff gave Linda his attorney's name and telephone number and requested that she call his attorney if she had any questions.

5. On or about November 9, 2010, Plaintiff received another call from Linda regarding the alleged debt.

6. Linda demanded that Plaintiff agree to make payments on the account.

7. Plaintiff told Linda once again that he was represented by an attorney and that he was filing bankruptcy.

8. Linda asked Plaintiff for his bankruptcy docket number.

9. Plaintiff told Linda that he was not aware of the docket number and that she should call his attorney to get that information.

10. Linda told Plaintiff that until a docket number is issued by the Court, that she could call Plaintiff as much as she wanted to collect the debt.

11. Once again, Plaintiff asked that she communicate with his attorney regarding this issue.

12. Linda told Plaintiff that since there was no docket number she did not have to call his attorney and that she would continue to call him to setup payment arrangements.  In fact, she said that she would call him back the very next day.

13. True to her threat, Linda called Plaintiff again on November 10, 2010 and once again demanded that he make payment arrangements.

14. Plaintiff, growing frustrated, told Linda that he was filing bankruptcy and that she should speak to his attorney if she had any questions.

15. Linda told him that she had checked the public records he had not filed bankruptcy yet.  She then said that until there was a docket number in the public records she would continue to call him to collect on the account.

16. Linda told Plaintiff that he would either have to agree to make payments or else she would have his wages garnished.

17. On or about December 8, 2010 Linda called Plaintiff again to collect on the account.

18. Plaintiff told Linda again that he was in the process of filing bankruptcy and that she should contact his attorney if she had any questions.

19. Once again, Linda said that her department had checked the public records and no bankruptcy case had been filed yet and that she would continue to call him until he either agreed to make payments or until he actually filed bankruptcy.

20. Plaintiff again asked Linda to call his attorney and to stop calling him regarding the debt.

21. Plaintiff then tried to give Linda his attorney's contact information again but she refused to write down the information.

22. Linda then threatened to have Plaintiff's wages garnished if he did not agree to make payments.

23. Despite Linda's threats to have Plaintiff's wages garnished, Allied Interstate has not even filed a lawsuit against Plaintiff regarding the alleged debt.

24. Upon information and belief, Allied did not intend to file a lawsuit against Plaintiff and in fact, probably did not even have standing to do so.

25. The numerous and frequent calls and false threats to garnish Plaintiff's wages made by Linda on behalf of Allied Interstate were harassing and caused Plaintiff a great deal of stress and frustration.

**First Claim for Relief**
**FDCPA Violation**
**Stephen Woodard v. Allied Interstate, Inc.**

26. Plaintiff repeats, realleges, and incorporates by reference paragraphs 1 through 25.

27. The foregoing acts and omissions of Allied and its agents constitute numerous and several violations of the FDCPA, including, but not limited to 15 U.S.C. §§1692c(a)(2), 1692d, 1692d(5), 1692e and 1692f.

28. As a result if the above violations of the FDCPA, Defendant is liable to Plaintiff for actual damages, statutory damages, costs and attorney's fees.

**Second Claim for Relief**
**FCCPA Violation**
**Stephen Woodard v. Allied Interstate, Inc.**

29. Plaintiff repeats, realleges, and incorporates by reference paragraphs 1 through 25.

30. The foregoing acts and omissions of Allied and its agents constitute numerous and several violations of the FCCPA, including, but not limited to F.S.A. §§559.72(7), 559.72(9), and 559.72(18).

31. The actions of Defendant were done with the intent to coerce Plaintiff into paying a consumer debt.

32. As a result of the above violations of the FCCPA, Defendant is liable to Plaintiff for actual damages, statutory damages, punitive damages, attorney's fees and costs.

WHEREFORE, PLAINTIFF respectfully prays that judgment be entered against DEFENDANT for the following:

a. Actual damages pursuant to 15 U.S.C. §1692k and F.S.A §559.77(2);

b. Statutory damages pursuant to 15 U.S.C. §1692k and F.S.A. §559.77(2);

c. Punitive damages pursuant to F.S.A. §559.77(2);

d. Costs and reasonable attorney's fees pursuant to 15 U.S.C. §1692k and §559.77(2); and

e. For such other and further relief as may be just and proper.

Dated:  December 22, 2010            Respectfully submitted,

 s/G. Donald Golden
G. DONALD GOLDEN, ESQUIRE
Florida Bar No. 0137080
E-Mail:  don@brandonlawyer.com
JOSEPH B. BATTAGLIA, ESQUIRE
Florida Bar No. 0058199
E-Mail: joe@brandonlawyer.com
DAVID S. BROMLEY, ESQUIRE
Florida Bar No. 0155349
E-Mail: dave@brandonlawyer.com

THE GOLDEN LAW GROUP
808-A Oakfield Drive
Brandon, Florida   33511
Telephone:  (813) 413-8700
Facsimile:   (813) 413-8701
Attorney for Plaintiff

**DEMAND FOR JURY TRIAL**

PLEASE TAKE NOTICE that Plaintiff demands trial by jury in this action.


  s/G. Donald Golden
G. Donald Golden, Esquire